**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**FELICIA K. MITCHAM on behalf of K. N. M., a child.,**

        **Plaintiff,**

**-vs-**                                                      **Case No. 6:09-cv-2100-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

This cause came on for consideration without oral argument on review of the Commissioner's administrative decision to deny Plaintiff's application, on behalf of her child, for social security benefits. For the reasons set forth herein, the decision of the Commissioner is **REVERSED and REMANDED**.

### *PROCEDURAL HISTORY*

Plaintiff protectively filed an application for Child's Supplemental Security Income on behalf of Claimant, on March 16, 2006 (R. 52-55). The application was denied initially and on reconsideration, and Plaintiff requested and received an administrative hearing before an administrative law judge ("the ALJ") (R. 340-411). The ALJ issued an unfavorable decision on June 1, 2009 (R. 17-30). Plaintiff requested review from the Appeals Council, and submitted additional evidence and briefing (R. 330-339). The Appeals Council summarily denied the request for review on October 15, 2009 (R. 6-7), making the ALJ's decision the final decision of the Commissioner. This action timely followed (Doc. No. 1), and the parties consented to the jurisdiction of the United States Magistrate Judge. The matter has been fully briefed and is now ripe for resolution.

### *NATURE OF CLAIMED DISABILITY*

On behalf of the Claimant, Plaintiff alleges disability due to Bipolar Disorder, Attention Deficit Hyperactivity Disorder ("ADHD") and Oppositional Defiant Disorder (R. 20).

*Summary of Evidence Before the ALJ*

Claimant was eleven years old at the time of the ALJ's decision (R. 52) and, as such, has no relevant work experience. At the time of the hearing, Claimant was being home-schooled (R. 350).

The medical record for the applicable time period is set forth in detail in the decision and, in the interests of privacy and brevity, will not be repeated here except as necessary to address Plaintiff's specific objections. By way of summary, the ALJ determined that Claimant had the severe impairments of oppositional defiant disorder (ODD), bipolar disorder and Attention Deficit Disorder (ADD), and the record supports this uncontested finding (R. 20). In addition to the medical records, the administrative record includes school records and reports, opinions from state agency non-examining consultants, and numerous forms completed by Plaintiff. Additionally, both Plaintiff and Claimant appeared and testified at the administrative hearing.

Having determined that Claimant had severe impairments, the ALJ next determined that Claimant did not have an impairment that met, equaled or functionally equaled a section of the Listing of Impairments (R. 20-21). Specifically, the ALJ determined that Claimant had a "marked" limitation in the domain of interacting and relating to others, but a "less than marked" limitation in the domains of attending and completing tasks, caring for herself, and health and well being and no limitation in the domains of acquiring and using information and moving about and manipulating objects (R. 71, 23-29). Accordingly, the ALJ concluded that Claimant was not disabled (R. 30).

### *STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings

are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir.2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" 357 F.3d at 1240 n. 8 (internal quotation and citation omitted); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### *ISSUES AND ANALYSIS*

Plaintiff raises three issues on behalf of Claimant: 1) whether the Appeals Council erred in denying review; 2) whether the ALJ's finding that Claimant has responded to treatment and medication is supported by substantial evidence; and 3) whether the ALJ's finding that Claimant's impairments are not functionally equivalent to a listed impairment is based on substantial evidence.

#### *Evaluating a Claim of Childhood Disability*

The ALJ uses a three-step sequential evaluation process to determine whether a child is disabled: (1) whether the child is working; (2) whether the child has a severe impairment or combination of impairments; and (3) whether the child's impairment or combination of impairments

meets, medically equals, or functionally equals the severity of an impairment in the Listing of Impairments. 20 C.F.R. § 416.924 (2010). In determining whether a child's medical condition is functionally equivalent to the Listings, the Commissioner considers the child's activities within the context of six domains, which are "broad areas of functioning intended to capture all of what a child can and cannot do." 20 C.F.R. § 416.926a(b)(1).  In order to functionally equal a listing, a child must demonstrate a "marked" limitation in at least two domains, or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a).  The six domains applicable to an analysis of functional equivalence are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1); *Shinn o/b/o Shinn v. Commissioner of Social Security*, 391 F.3d 1276, 1279 (2004).

Applied here, based on a review of the evidence then of record, the ALJ found that Claimant had no limitation in acquiring and using information, or moving about and manipulating objects (R. 24, 28); a less than marked limitation in attending and completing tasks, the ability to care for herself, and in health and physical well-being (R. 25, 29); and a marked limitation in interacting and relating with others (R. 26).

After the decision was issued, Plaintiff submitted new evidence to the Appeals Council, including: (1) a letter from Marc Crandall, Psy.D., LMHC , the child's treating psychologist, dated August 5, 2009; (2) a functional assessment form completed by Bhaskar Raju, M.D., the child's treating psychiatrist; (3) a letter from Donnie Hungerford, Ph.D., a family services counselor, dated July 20, 2009; and other records, including school records, a 2005 foster care report, additional statements from Plaintiff, and briefing by counsel (R. 300-339). In its Notice of Appeals Council Action (R. 6-10), the Appeals Council stated only:

-4-

> In looking at your case, we considered the reasons you disagree with the decision in the material listed on the enclosed Order of Appeals Council.[1]  We found that this information does not provide a basis for changing the Administrative Law Judge's decision. (R. 7).

*Appeals Council Review*

"When a claimant challenges both the ALJ's decision to deny benefits and the decision of the Appeals Council to deny review based on new evidence, 'a reviewing court must consider whether that new evidence renders the denial of benefits erroneous.' " *Poellnitz v. Astrue*, 349 Fed. Appx. 500, 501(11th Cir. 2009)(*quoting Ingram v. Comm'r of Social Security Administration*, 496 F.3d 1253, 1262, 1265-66 (11th Cir. 2007).)  Generally, a claimant is allowed to present new evidence at each stage of the administrative process. *Ingram*, 496 F.3d at 1260-61; *Poellnitz*, 349 Fed. Appx. at 503. The Appeals Council must consider new evidence that is material and relevant to the period on or before the date of the ALJ's decision, and must review the case if the ALJ's actions, findings or conclusion is contrary to the weight of the evidence currently of record. 20 C.F.R. 404.970(b)). Importantly, "the [Appeals Council] must show in its written denial of review that it has evaluated adequately the new evidence*." Colon ex rel. Colon v. Commissioner of Social Sec*., 2011 WL 208349, 2 (11th Cir., January 25, 2011) (unpublished), *citing Epps v. Harris*, 624 F.2d 1267, 1273 (5th Cir.1980).

When reviewing the Appeals Council's denial of review, courts are to "look at the pertinent evidence to determine if the evidence is new and material, the kind of evidence the Appeals Council must consider in making its decision whether to review an ALJ's decision." *Robinson v. Astrue*, 365 Fed. Appx. 993, 996 (11th Cir. 2010). "'New' evidence is evidence that is non-cumulative and 'material' evidence is evidence that is 'relevant and probative so that there is a reasonable possibility that it would change the administrative result.'" *Id.* (internal citations omitted).  Applied here, the

---

[1]The Order merely listed the exhibits by author and date.

-5-

Court finds the newly submitted opinions of the treating providers to be new, chronologically relevant, and material within that definition.

The ALJ did not have before her and thus did not evaluate the updated opinions of Dr. Crandall, the treating psychologist, and Dr. Raju, the treating psychiatrist. As the evidence apparently[2] post-dates the ALJ's decision, it is "new." As the reports purport to reflect Claimant's functioning during the relevant period of time, they are chronologically appropriate. As the reports contain specific functional limitations and observations from treating providers that contradict the ALJ's findings, they are material, as well.

A medical opinion of a treating source is entitled to controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). A treating source is defined as the claimant's own physician or psychologist who has provided the claimant with medical treatment or evaluation, and who has had an ongoing relationship with the claimant. 20 C.F.R. § 416.902. The opinion of a treating source may be discounted where the opinion is not supported by objective medical evidence or is merely conclusory. *Robinson ,*365 Fed. Appx. at 996.

*Dr. Crandall*

The record before the ALJ established that Claimant was in treatment with Mark Crandall, Psy.D, since April 2008 (R. 226). Dr. Crandall saw Claimant weekly, confirmed Claimant's diagnosis and difficulties, and reported that he witnessed "a great deal of unpredictable behavior" which included physical violence and verbal aggression (R. 226). The ALJ mentioned Dr. Crandall in passing (R. 21), but no treatment notes or formal opinion were of record at the time of the ALJ's decision.

---

[2]The report submitted by Dr. Raju is undated, but the header notes that it was sent by facsimile from the Orlando Psychiatric Associates on August 11, 2009 (R. 317-318).

In new evidence presented to the Appeals Council, Dr. Crandall wrote a detailed updated report dated August 5, 2009, providing his assessment of Claimant's mental health treatment and functional limitations, including:

> [Claimant's] mother has . . . continually reported that [Claimant] has been suffering from uncontrollable Encopresis on a consistent basis. This particular issue appears to be affecting [Claimant]'s sense of self and may have numerous implications for [Claimant]'s overall well-being.
>
> [Claimant] overall behavior and actions have affected multiple areas of her life. She has a very difficult time acquiring knowledge and using information. This has been evidenced by [Claimant]'s use of her knowledge in a negative way. At the age of 6, [Claimant] had taken mother's checkbook to school and wrote out checks to all of her friends. One month ago, she had used her mother's credit cards to purchase items online without any authorization or approval from her mother to do so. Her impulsive nature significantly impacts her ability to use her acquired knowledge and information in an appropriate manner.
>
> [Claimant] also has great difficulty attending to and completing tasks. This has been evidenced by [Claimant] not completing her school assignments in a timely manner. She will become easily distracted and sidetracked when cooking on the stove, is very forgetful, she gives up on any tasks that she does not find enjoyable or redeeming to her, and she requires additional supervision throughout all that she does due to her lack
> of fear of consequences such as fire setting … .
>
> [Claimant] has great difficulty interacting and relating towards and with others. This is evidenced by her not making friends at school and her poor social skills with regards to peers in general. She had reported spending her lunch time this past school year in the library, that she does not have any close friends, and recently had attempted to choke a young child who was residing with her family …. [S]he exhibits a great deal of anxiety around others, that she will climb upon on the roof of her home when peers or relatives come by, that she will always make up her own rules of games and never follow the rules as noted for her advantage, and that she has no filter with regards to her use of inappropriate language.
>
> [Claimant] has great difficulty with regards to her self care. This is further evidenced by her need of constant supervision due to her impulsive nature such as painting doors and smearing food on her arms, face, and legs. [Plaintiff] reported that [Claimant] does not exhibit positive hygiene habits as evidenced in by her not showering on a regular basis, not taking complete showers ([Claimant] will wash her hair sometimes and nothing else such as her arm pits), her discard for using toilet paper, her lack of bowel control at least 3-4 times per week and her choice of sitting in her own bowel elimination for hours until she is ready to wash up, that she doesn't brush teeth in the morning, that she enjoys the smell and odor of her arm pits, and that she will urinate

> while sitting on the furniture at least once a month.
>
> [Claimant] also has great difficulty with regards to taking care of her personal health and physical well being. This is evidenced by her poor eating habits which have led to
> high cholesterol levels, recurring infections, incontinence, constant agitation, chronic fatigue, encopresis, acne, and obesity. [Claimant] . . . exhibited little tolerance for physical activity during some play therapy exercises during our sessions… .

(R. 315-16). Dr. Crandall opined that Claimant "continues to function at a poor level overall" and commented that as clinical director of his agency, he oversees and manages all of the clinical cases and "[Claimant] has consistently been one of our more challenging clients and has exhibited behaviors unlike any other clients presently under our care and guidance . . . ." (R. 316).

In his brief, the Commissioner argues that the Appeals Council did not err in that: 1) there are no treatment notes supporting this assessment; 2) it appears the assessment is "almost entirely based on Plaintiff's subjective statements;" and 3) the objective observations are inconsistent with Claimant's testimony or are otherwise "vague, unsupported and do not negate the substantial objective evidence upon which the ALJ based her conclusions" (Brief at 12).

While there are no treatment notes to support the opinion, the opinion itself summarized the course of treatment, and no treatment notes contradict that summary. Moreover, as shown in the excerpt above, Dr. Crandall supported his assessment with specific observations and examples of Claimant's functioning. While some of that report includes observations from an interested observer (*i.e.,* Plaintiff), the very nature of psychological diagnosis and counseling is subjective. The Court finds that this assessment by a long standing treating provider is relevant and probative and the kind of evidence the Appeals Council should consider, and yet the conclusory denial of review gives no indication that the evidence was adequately evaluated.

*Dr. Raju*

Claimant was a patient of Orlando Psychiatric Associates from October 20, 2005 through January 29, 2009. (R. 227-299). While she was initially evaluated by psychiatrist Raju B. Nandimandalam, M.D., by the time of her hearing she was under the care of Bhaskar N. Raju, M.D. (R.. 227, 298, 299). Treatment notes of record show that Claimant improved with medication and therapy, but also noted continued problems with hygiene issues and aggressive behaviors toward others. The ALJ noted the treatment notes as support for the finding that Claimant is responding to treatment and medication and does not have an impairment or combination of impairments that functionally equal the Listings (R. 21-22).

The new evidence submitted to the Appeals Council includes a functional assessment form on which Dr. Raju asserts that Claimant has bipolar disorder, ADHD and an anxiety disorder which results in an extreme limitation in the domain of interacting and relating to others and a marked imitation in the domains of acquiring and using information, attending and completing tasks, caring for herself, and health and physical well being (R. 317). The Commissioner asserts that this evidence does not detract from the substantial evidence upon which the ALJ relied in that the conclusions are not supported by specific objective findings and are contradicted by the notations in treatment notes that indicate Claimant is improving with medication and therapy. While the Commissioner articulates a basis by which the Appeals Council *might* have discredited the conclusions, the Appeals Council's failure to include *any* substantive analysis of the opinion of this long-standing provider does not show that the Appeals Council "evaluated adequately the new evidence." *Colon ex rel. Colon, supra.*

When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R.

-9-

§ 404.1527(d). Here, the treatment records include numerous references to Claimant's ongoing issues with aggression and hygiene and Dr. Raju opined on February 10, 2009 that Claimant's "current goals" included decreased physical and verbal aggression, improved classroom behavior, improved hygiene, social skills and self esteem (R. 227). The fact that Claimant's treating psychiatrist noted the continued need for improvement in these areas *despite* Claimant's compliance with her medication and therapy regimen is evidence that the problems persisted. Viewed collectively with the other new evidence submitted to the Appeals Council, if this opinion is given the great weight due the opinion of a treating provider, it is reasonably possible that the new evidence would change the administrative result.

*Dr. Hungerford*

Corrie L. Hungerford, Ph.D. provided "individual and family therapy" to Plaintiff (R.308). In a letter dated July 20, 2009, Dr. Hungerford noted that Plaintiff was the client but Claimant was included in the family sessions. *Id.* Dr. Hungerford opined that Claimant was "clearly a very ill child who will need lifelong treatment and likely adult case management services as the likelihood of her being able to live independently and safely is very questionable." *Id.* She stated that Claimant "exhibited the following issues in a severe manner the last time I saw her: poor social skills, poor interpersonal skills, property damage, rage states, poor personal hygiene, poor impulse control, low frustration tolerance, immaturity, fire setting, physical and verbal aggression toward family members and peers, poor medical health related to her psychiatric symptoms, medication non-compliance, likely psychosis, severe mood swings, poor academic performance" (R. 309). The Commissioner contends that this opinion is not entitled to any weight in that Dr. Hungerford was not Claimant's treating provider, no treatment notes are presented, the opinion is based on subjective reports, and conflicts with other evidence that supports the ALJ's opinion.

While not Claimant's direct provider, this clinician did see Claimant, albeit in family sessions. To the extent Dr. Hungerford reported her personal observation of Claimants behavior, the opinion is not based on a subjective report of Plaintiff. Even if Dr. Hungerford is not a treating provider, under the regulations, "regardless of its source," the ALJ is required to consider every medical opinion that is in evidence. See 20 C.F.R. §§ 404.1527(d), 416.927(d); *see Duncan v. Astrue*, 2008 WL 1925091, 1 (M.D. Fla. 2008). Again, without any analysis from the Appeals Council, the Court cannot determine whether this probative report was considered at all, let alone whether it was "adequately" considered.

Viewed collectively, the Court finds the opinions of the three medical professionals contradict the findings of the ALJ with respect to the degree of limitations in the various domains and, since there was no statement of functional limitations previously of record from a treating physician, there is at least a reasonable possibility that these limitations, if credited, would change the administrative result. As such, with the addition of these three reports, the Court finds the decision of the ALJ is contrary to the weight of the evidence[3] and the Appeals Council erred in denying further review.[4] This conclusion necessarily moots Plaintiff's remaining two issues for this Court's review, as reevaluation of the entire record is appropriate.

## CONCLUSION

In accordance with the foregoing, the Court finds the administrative decision was not supported by substantial evidence and was not made in accordance with proper standards of law. The Clerk of the Court is directed to enter a judgment pursuant to sentence four of 42 U.S.C. § 405(g)

---

[3] As noted, the ALJ found Claimant had a less than marked limitation in the areas of caring for herself and health and well-being; a conclusion that is at odds with the new opinion evidence. Moreover, the ALJ did not find Claimant's encopresis to be a severe impairment (Doc. No. 20). If the limitations of the treating providers are credited, Claimant's encopresis would, indeed, be considered severe at step two of the sequential analysis and would have to be considered in the remaining step of the childhood disability analysis.

[4] The Court agrees with the Commissioner that the pharmacy records and Plaintiff's "new" statement summarizing Claimant's difficulties (R. 325) do not meet the standard of new, material evidence.

**REVERSING** the Commissioner's decision and **remanding** with instructions to 1) consider the opinions of Drs. Crandall, Raju, and Hungerford, and afford them the weight to which they are properly entitled; 2) reevaluate the entirety of the evidence in determining the existence of severe impairments; 3) reconsider the Claimant's levels of functioning in the six domains; and 4) conduct any further proceedings deemed appropriate. Following entry of judgment, the Clerk is directed to terminate all pending matters and close the case.

**DONE** and **ORDERED** in Orlando, Florida on February 8, 2011.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record